UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MICHAEL J. HORTON, | Case No. 17-cv-01915-LB |
| Plaintiff, | |
| v. | **ORDER OF SERVICE** |
| PARSONS, et al., | Re: ECF No. 1 |
| Defendants. | |

**INTRODUCTION**

Michael J. Horton, an inmate currently housed at the California State Prison - Sacramento, filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983. He consented to proceed before a magistrate judge. (ECF No. 4.)[1] His complaint is now before the court for review. This order finds that the complaint states cognizable claims, and orders service of process on the defendants.

---

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint cites are to the ECF-generated page numbers at the top of the documents.

**STATEMENT**

Mr. Horton alleges the following in his complaint:

At the relevant time, Mr. Horton was housed in the Department of State Hospitals facility at Salinas Valley State Prison "receiving treatment for various mental and emotional issues." (ECF No. 1 at 3.)

On September 2, 2015, Mr. Horton was on the recreation yard talking to other inmate-patients, when correctional officer ("C/O") J. Molina yelled out, "'shut up or I'll break your fucking jaws.'" (*Id.* at 4.) Mr. Horton asked C/O Molina to be more professional, and C/O Molina responded, "'shut the fuck up or I'll fuck you up.'" *Id.* C/O Molina then handcuffed Mr. Horton and escorted him back to the housing unit, during which time he threatened to put Mr. Horton in the hospital if Mr. Horton ever challenged him again.

Once in the housing unit, Mr. Horton reported the events to correctional sergeant Parsons, who was C/O Molina's supervisor. Sergeant Parsons said that he would not go against his officer and refused to take any action about the threats and misconduct of C/O Molina.

On September 3, 2015, Mr. Horton was on his way to the yard and passed by C/O Molina who said, "'you bitch. I'm waiting to fuck you up.'" (*Id.*) Later that day on the recreation yard, Mr. Horton complained to his doctor, who then talked to the yard officers. At that point, C/O Molina walked toward Mr. Horton and yelled for the inmates to get down on the ground. As Mr. Horton was lowering himself to the ground, C/O Molina began hitting Mr. Horton "with his fist, slamming [Mr. Horton's] head into the ground and grinding his knee into [Mr. Horton's] neck causing excruciating pain." (*Id.* at 5.) C/O Molina yanked and twisted Mr. Horton's arm, fracturing his elbow. (*Id.*) Mr. Horton was handcuffed and taken back to his housing unit by C/O Molina. C/O Molina slammed Mr. Horton's face into a cell window, causing his head to bleed, and then pushed him into the cell. C/O Molina then removed the handcuffs. (Medical records attached to the complaint document an elbow fracture and other injuries. (*Id.* at 9-14.))

Mr. Horton was seen by medical staff later that day for his injuries. Also that day, Mr. Horton reported the incident to another sergeant and was interviewed by a lieutenant the next day.

1   C/O Molina "falsified a rule violation report, claiming that [Mr. Horton] was 'resisting a peace officer'" and had caused his own head injuries. (*Id.* at 6.) A disciplinary hearing was held, at which the rule violation report was found to be untrue and the charges were dropped by the hearing officer.

**ANALYSIS**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* complaints must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The use of excessive force may amount to the cruel and unusual punishment prohibited by the Eighth Amendment. Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Liberally construed, the complaint states a cognizable claim against C/O Molina for the use of excessive force on Mr. Horton on September 3, 2015. The alleged threats made by C/O Molina likely would be relevant to whether his use of force on Mr. Horton was malicious and sadistic.

A separate claim for relief is not stated against C/O Molina for his harsh language, verbal insults and threats against Mr. Horton. As the Ninth Circuit has explained, "'the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons' of which 'we do not approve,' but which do not violate the Eighth Amendment." *Watison v. Carter*, 668 F.3d 1108, 1113 (9th Cir. 2012) (quoting *Somers v. Thurman*, 109 F.3d 614, 622

(9th Cir.1997) (internal quotation marks omitted)); *see also Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) ("it trivializes the eight amendment to believe a threat constitutes a constitutional wrong").

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Liberally construed, the complaint states a cognizable retaliation claim against C/O Molina for physically assaulting Mr. Horton on September 3 -- an assault that the allegations of the complaint suggest was prompted by Mr. Horton's complaints to the doctor, who in turn told the yard officers about those complaints.

A claim for relief is not stated against C/O Molina for writing the allegedly false rule violation report. False charges alone are not actionable under § 1983 because falsely accusing a person of misconduct does not violate a right secured by the Constitution or laws of the United States. An allegation of a false charge that results in discipline that is not severe enough to amount to a deprivation of a protected liberty interest under *Sandin v. Conner*, 515 U.S. 472 (1995) – that is, by imposing an atypical and significant hardship or by inevitably affecting the duration of confinement – does not state a claim under § 1983. *See Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002) (no § 1983 claim was stated for allegedly false charges because the disciplinary confinement imposed was too short to amount to an atypical and significant hardship under *Sandin*). Here, the rule violation report allegedly was determined to be unfounded and resulted in no discipline, so Mr. Horton was not deprived of a protected liberty interest as a result of the allegedly false charge.

The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison and jail officials take reasonable measures for the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). A prison or jail official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the

official is, subjectively, deliberately indifferent to the inmate's safety. *See id.* at 834. To be liable in a failure-to-prevent-harm situation, the official must know of and disregard an excessive risk to inmate safety. *See id.* at 837. Liberally construed, the complaint states a cognizable claim against correctional sergeant Parsons for failing to protect Mr. Horton after the latter alerted sergeant Parsons to C/O Molina's threats.

Finally, Mr. Horton's complaint seeks damages from the defendants "in their individual and official capacities." (ECF No. 1 at 7.) The official-capacity claims are dismissed because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). The claims against the defendants in their individual capacities are not affected by this rule.

## CONCLUSION

1. Liberally construed, the complaint states cognizable § 1983 claims against C/O Molina for excessive force and retaliation, and against sergeant Parsons for deliberate indifference to Mr. Horton's safety.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the complaint, a copy of all the documents in the case file, and a copy of the "consent or declination to magistrate judge jurisdiction" form upon the following two defendants at the Department of State Hospitals facility at Salinas Valley State Prison: correctional officer J. Molina, and correctional sergeant Parsons.

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

   a. No later than **July 28, 2017**, the defendants must file and serve a motion for summary judgment or other dispositive motion. If the defendants are of the opinion that this case cannot be resolved by summary judgment, the defendants must so inform the court prior to the date the motion is due. If the defendants file a motion for summary judgment, the defendants must provide to the plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012). If the motion is based on nonexhaustion of administrative remedies, the defendants must comply with the notice

and procedural requirements in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).

  b. The plaintiff must serve and file his opposition to the summary judgment or other dispositive motion no later than **August 25, 2017**. The plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

  c. If the defendants wish to file a reply brief, the reply brief must be filed and served no later than **September 8, 2017.**

 4. The plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants [may make] a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. [¶] Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.

*Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998). If a defendant files a motion for summary judgment for failure to exhaust administrative remedies, he or she is seeking to have the case dismissed. A plaintiff faced with such a motion can oppose it using the same methods as described above for other summary judgment motions. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, the case will be dismissed and there will be no trial.

 5. All communications by the plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to the defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, the plaintiff may serve a document by mailing a true copy of the

document directly to the defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7. The plaintiff is responsible for prosecuting this case. The plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). The plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility or is released from custody.

8. The plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the court for consideration in this case.

**IT IS SO ORDERED.**

Dated: May 19, 2017

LAUREL BEELER
United States Magistrate Judge