IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL HORTON, | No. C 17-1915 WHA (PR) |
| Plaintiff, | **ORDER GRANTING IN PART DEFENDANTS' SUMMARY JUDGMENT MOTION; DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION; REFERRING CASE TO JUDGE ILLMAN FOR MEDIATION** |
| v. | |
| J. MOLINA; SERGEANT PARSONS, | |
| Defendants. | (Dkt. Nos. 35, 50, 51) |

**INTRODUCTION**

Plaintiff, a California prisoner proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against J. Molina and Sergeant Parsons, two correctional employees at the Department of State Hospitals ("DSH") facility in Salinas Valley State Prison, where plaintiff was incarcerated at the time of the events described in the complaint. The remaining claims are that Molina used excessive force against plaintiff and retaliated against him for exercising his First Amendment rights, and that Parsons failed to protect him from harm, i.e. Molina's use of force.

Defendants filed a motion for summary judgment on the grounds that plaintiff did not properly exhaust all of his available administrative remedies. That motion was denied. Plaintiff filed a motion for summary judgment, which was denied without prejudice to consideration following mediation proceedings. Magistrate Judge Illman conducted mediation proceedings, but the case did not settle. Defendants filed an opposition to plaintiff's summary judgment motion and a cross-motion for partial summary judgment. Plaintiff did not file an opposition to defendants' motion. For the

reasons discussed below, plaintiff's summary judgment motion is **DENIED** and defendants' summary judgment motion is **DENIED IN PART AND GRANTED IN PART**. The case is referred to Magistrate Judge Illman for further mediation proceedings.

## STATEMENT

Plaintiff presents the following account of the events: On September 2, 2015, defendant Molina, a correctional officer, threatened to attack him while they were on the DSH yard, and again while Molina escorted him back to his housing unit. At the housing unit, plaintiff reported the threats to Sergeant Parsons, whom plaintiff alleges was Molina's supervisor, but Parsons did not take any action. The next day, Molina threatened plaintiff again, and plaintiff complained to Dr. Johnson about the threat. Molina then ordered all inmates on the yard to get on the ground. As plaintiff was lowering himself, Molina hit him, slammed his head into the ground, and ground his knee into plaintiff's neck. Molina also twisted and "yanked" plaintiff's arm behind his back, fracturing his elbow. Molina and other officers handcuffed plaintiff and brought him to his cell. Molina slammed plaintiff's face into his cell window while waiting for the cell door to open, causing plaintiff's face to bleed "profusely."

Defendants offer a different account of their interaction with plaintiff. According to Molina, on September 2, 2015, he approached plaintiff on the yard because it appeared to Molina that plaintiff was making Dr. Johnson uncomfortable. He told plaintiff to stop talking to Dr. Johnson, and then he and plaintiff argued. Molina handcuffed plaintiff and brought him back to his cell, but he did not threaten to hurt plaintiff. Defendant Parsons states that he was not in fact Molina's supervisor, and he does not recall speaking to plaintiff that afternoon.

Dr. Johnson states that while she was on the yard the next day, plaintiff made inappropriate remarks to her about her appearance and about meeting her outside of the prison. She told him to stop, but he persisted and encroached on the area reserved for staff where she was standing with her back to a wall. Plaintiff also turned to other

inmates and asked if they agreed with his statements about her appearance. She felt threatened by plaintiff and reported all of this to Molina and other officers.

Molina ordered plaintiff to approach, but he walked away. Prison officials issued a general order over the public address system to all inmates in the yard to get down in a prone position, i.e. face down with arms and legs extending outward. Plaintiff initially refused but eventually lay face down with his arms under his body. When Molina and other officers approached, he refused to spread his arms out, put his hands behind his back, or cross his feet, and instead he swore at them. Molina placed his knee on plaintiff's buttock and his hand on plaintiff's back, and reached for plaintiff's right forearm to pull it out for handcuffing. When he did so, plaintiff, who was muscular and strong, tensed his arm and resisted. Molina pulled plaintiff's arm out with the "minimum force necessary" under the circumstances and put plaintiff's hand behind his back. Another officer did the same with plaintiff's left hand while plaintiff resisted, used vulgar language, and refused to obey orders. They put handcuffs on plaintiff, stood him up, and escorted him to his cell, and plaintiff continued to shout obscenities at them. When they arrived at the housing unit, they waited for plaintiff's cell to be searched. Molina denies banging plaintiff's head against a wall and states that plaintiff instead banged his own head against a wall several times. Molina denies punching or hitting plaintiff, slamming his head into the ground, or threatening him or any other inmate, and states that plaintiff did not complain about or show any pain. He also states that he did not retaliate against plaintiff.

Three other officers who were present for these events filed incident reports that are consistent with Molina's account, while another officer's report indicated that plaintiff appeared to cooperate with the handcuffing.

Plaintiff sustained a non-displaced fracture of a bone in his right elbow. He received an elbow splint for approximately two months. On November 16, 2015, an x-ray showed that the fracture had healed. Plaintiff received medical examinations for

3

right elbow pain four times between May 2016 and April 2018.  He did not receive a diagnosis of continued injury.

Plaintiff received a Rules Violation Report ("RVR") against plaintiff for resisting Molina.  The disciplinary hearing officer found plaintiff not guilty, however, because the staff reports did not contain sufficient details to find him guilty of the offense.  The officer did find that plaintiff had "failed to meet staff expectations."

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavi6ts which demonstrate the absence of a genuine issue of material fact. When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins.  *Celotex Corp.v. Cattrett*, 477 U.S. 317, 323 (1986).

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).

//

4

## II. ANALYSIS

Plaintiff's remaining claims are that Molina used excessive force against him in violation of his Eighth Amendment rights, that Molina retaliated against him for the exercise of his First Amendment right to freedom of speech, and that Parsons failed to protect him from Molina's use of excessive force. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1. EXCESSIVE FORCE

The use of excessive force may amount to the cruel and unusual punishment prohibited by the Eighth Amendment. Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). In conducting that inquiry, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 7.

The parties do not dispute that Molina used force against plaintiff, but there are clear factual disputes about the material issues of how much force Molina used and how much resistance plaintiff presented; indeed, as defendants put it, their accounts of such matters "differ wildly." Plaintiff states under oath that after threatening plaintiff over two days, Molina hit him, kneeled on his neck, yanked his arm with enough force to break his elbow, and slammed his head into a cell window while he was handcuffed. Plaintiff also states that he did not resist Molina. Defendants, on the other hand, submit evidence that Molina did not punch or hit plaintiff, that he used the "minimum" force necessary to pull plaintiff's arm out, and that plaintiff banged his own head against the

wall. They also assert that plaintiff did not comply with orders to prone out, resisted the handcuffing, and used vulgar and belligerent language against Molina and other staff. Defendants submit reports from three staff members corroborating their account of handcuffing incident, but another official reported that plaintiff cooperated. Defendants' argument that they did not use excessive force is based solely on their version of events. To be sure, a reasonable fact-finder could believe their account, and if so, find that Molina did not use excessive force to remove plaintiff from the yard to stop him from harassing Dr. Johnson. On the other hand, a reasonable fact-finder could also believe plaintiff's account and conclude that Molina used sadistic or malicious force in violation of plaintiff's Eighth Amendment rights. Consequently, neither party may receive summary judgment on the excessive force claim.

Defendants also argue that Molina is entitled to qualified immunity. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). When considering this argument for purposes of summary judgment, plaintiff's version of events must be assumed to be true. No reasonable official could believe that he or she could lawfully hit a compliant inmate, slam his head into the ground, kneel on his neck, break his elbow, and later slam his head into a window while he was handcuffed. Consequently, summary judgment is not appropriate on qualified immunity grounds.

2. RETALIATION

Plaintiff claims that Molina assaulted him to retaliate against him for exercising his First Amendment rights. Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

6

rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

There is no evidence that plaintiff engaged in any protected speech that caused Molina to assault him. A valid retaliation claim could be based on evidence that defendants retaliated against him for speaking to Dr. Johnson about Molina's threats or medical issues. There is no such evidence, however. Defendants have presented evidence that plaintiff harassed Dr. Johnson her about her looks and dress, suggested that they would have a sexual contact outside of the prison, persisted in such talk after she told him to stop, and invited other inmates to support his opinions. Plaintiff doe not contradict evidence. Combined with his encroaching into her space, these words caused her to feel threatened. Plaintiff does not have a First Amendment right to engage in harassing or threatening speech, however, and as such it cannot form the basis of a valid retaliation claim.

Plaintiff alleges that Molina beat him because plaintiff had "challenged" him the day before. Even assuming that such a challenge constituted protected speech, there is no evidence that was Molina's motive for forcibly removing plaintiff from the yard. The only evidence of Molina's motive is Molina's statement that he removed plaintiff because of plaintiff's harassment of Dr. Johnson. This statement is corroborated by Dr. Johnson's sworn statements about the harassment that she reported to Molina.

There are no triable factual questions that, if resolved in plaintiff's favor, would support a viable retaliation claim against Molina. Accordingly, he is entitled to summary judgment on this claim.

3.  FAILURE TO PROTECT

Plaintiff alleges that he told Sergeant Parsons that Molina threatened to hurt him, but Parsons failed to prevent Molina's assault the next day. The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison and jail officials take reasonable measures for the safety of inmates, including violence at the hands of other

inmates or staff members. *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). A prison or jail official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. *Id*. at 834. To be liable in a failure-to-prevent-harm situation, the official must know of and disregard an excessive risk to inmate safety. *Id.* at 837.

There is no triable issue as to whether Parsons disregarded plaintiff's allegation that Molina threatened him. Defendants present evidence that Parsons was not in fact Molina's supervisor, and plaintiff presents no evidence to support his allegation to the contrary. There is no evidence, therefore, that Parsons had the authority to reassign Molina, move plaintiff, or otherwise separate the two. Parsons does not remember speaking to plaintiff, but he does state that if he learned that Molina threatened plaintiff, he would have informed Molina's supervisor. Plaintiff presents no evidence that Parsons failed to take this step, however, and there is no evidence suggesting any other actions within Parsons's purview that he failed to take prevent Molina from assaulting plaintiff. As a result, there is no evidence of that Parsons disregarded an excessive risk of harm to plaintiff.

There is, moreover, no evidence that Parsons had the requisite state of mind to be liable under the Eighth Amendment. Plaintiff must show that Parsons was deliberately indifferent to his safety, i.e. that he knew of an excessive risk to plaintiff's safety. *See ibid.*; *cf. Jeffers v. Gomez*, 267 F.3d 895, 918 (9th Cir. 2001) (to be liable under the Eighth Amendment for the use of force by subordinate prison guards, a supervisor's actions — e.g. substandard training, supervision, policy creation — must have resulted from malice, sadism or an intent to cause the inmate harm; no such showing made). In this context, plaintiff must prove that Parsons knew there was an excessive risk that Molina actually made the threat and, if he did, that he would carry it out. Plaintiff's only evidence on this issue is that he told Parsons that Molina threatened him. Even if this

was true, there is no evidence that Parsons believed plaintiff that Molina had actually made the threat, or that Parsons had some basis to think there was an excessive risk that Molina would carry out such a threat. Consequently, even looking at the evidence in a light most favorable to plaintiff, there is no triable issue as to whether Parsons knew of an excessive risk of harm to plaintiff's safety.

Parsons is entitled to summary judgment on plaintiff's Eighth Amendment claim.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment in **DENIED**. Defendants' motion for summary judgment is **DENIED** on plaintiff's claim against Molina for using excessive force, but the motion is **GRANTED** on plaintiff's retaliation claim and on plaintiff's failure-to-protect claim, discussed above. Defendants' motion for leave to file an oversized brief is **GRANTED** until the briefing schedule ordered below is completed.

This case is **REFERRED** to Magistrate Judge Illman pursuant to the Pro Se Prisoner Mediation Program. All further proceedings in this case except are **STAYED** with the exception of any proceedings related to the mediation ordered below.

The mediation proceedings shall take place within 120 days of the date this order is entered. Magistrate Judge Illman shall coordinate a time and date for a mediation proceeding with all interested parties or their representatives and, within five days after the conclusion of the mediation proceedings, file a report. All mediation proceedings shall be confidential and no statement made therein will be admissible in any proceedings in the case, unless the parties otherwise agree. No part of the mediation

//
//

proceeding shall be reported, or otherwise recorded, without the consent of the parties, except for any memorialization of a settlement.

The clerk shall send a copy of this order to Judge Illman.

IT IS SO ORDERED.

Dated: December   15  , 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE