UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. HORTON,<br><br>    Plaintiff,<br><br>    v.<br><br>PARSONS, et al.,<br><br>    Defendants. | Case No. 17-cv-01915-JSC<br><br>**ORDER ENFORCING SETTLEMENT AGREEMENT**<br><br>Re: Dkt. No. 176 |

Jury trial in this excessive force case was scheduled to commence on October 24, 2022. The jury pool was summoned, online juror questionnaires completed, and initial excusal orders made. On the Friday evening before the Monday trial, the parties notified the Court they had settled the action. So, that weekend, the jury commissioner notified all of the summoned jurors they did not have to appear for the Monday trial.

Here we are, over three months later, and the case has yet to be dismissed. Instead, Defendant Molina moves to enforce the settlement. (Dkt. No. 176. ) After carefully considering the parties' submissions, and having had the benefit of oral argument on February 9, 2023, the Court grants the motion to enforce the settlement. But it will enforce the settlement the parties made, not the one Defendant wishes he had made.

**RELEVANT BACKGROUND**

With trial scheduled to commence on Monday, October 24, 2022, the parties resumed their settlement discussions on October 20, 2022. Defendant explained that pursuant to California Penal Code Section 2085.8, Plaintiff's restitution and fines still owed would be deducted from the settlement payment. (Dkt. No. 176-1 ¶ 2.) The following day, Defendant emailed Plaintiff his restitution, fine and fee amounts due. The email explained the amounts were estimates, and would

be updated once the settlement is made. (*Id.* ¶ 3; Dkt. No. 176-2 at 2.)  Defendant separately provided Plaintiff with the portion of the CDCR's form settlement agreement concerning restitution.  (Dkt. No. 176-2 at 4.)

The parties continued their settlement discussions and reached agreement memorialized in an email exchange.

First, Plaintiff's counsel emailed Defense Counsel:

> It is . . . my understanding that we have a settlement agreement on the following terms, which will be memorialized in a formal agreement to be signed by Mr. Horton:
>
> (1) payment of $45,000 by defendant (or by CDCR on his behalf), reduced by $34,074.02, which includes Mr. Horton's remaining restitution obligation, the 5% administrative fee, and court costs, which yields a net payment to Mr. Horton of $10,925.98;
> (2) a dismissal of Mr. Horton's action with prejudice; and
> (3) each party to bear their own costs and fees.
>
> Please confirm by return email that you share this understanding.

(Dkt. No. 176-2 at 7.)

Defense counsel responded by email: "We will agree to the terms and conditions below." Counsel was referring to the conditions Plaintiff's counsel had emailed.  (Dkt. No. 176-2 at 6.) Shortly thereafter, the parties notified the Court that they had reached "a full settlement."  (Dkt. No. 179-1 at 8.)

The parties have since been unable to agree on a formal written agreement.  Defendant Molina wants Plaintiff to sign the CDCR's form settlement agreement.  Specifically, the dispute centers on Defendant's demand that Plaintiff release CDCR and other non-parties from all claims that could arise from the facts alleged in the complaint.  There also is a dispute as to the time frame for payment of the settlement amount.

**DISCUSSION**

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (cleaned up).  Whether a binding settlement was reached is governed by California law.  *United Commercial Insurance Service, Inc. v. The Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992).

A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain." *Lindsay v. Lewandowski*, 139 Cal. App. 4th 1618, 1622 (2006). But "the defense of uncertainty is disfavored, and the court should enforce the agreement if it appears the parties intended to enter into a contract and the outlines of the agreement are sufficiently definite that the court knows what is to be enforced." *Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1120 (C.D. Cal. 2002), *aff'd*, 64 Fed. Appx. 241 (Fed. Cir. 2003). Further, "[w]hen the parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement." *Blix St. Recs., Inc. v. Cassidy*, 191 Cal. App. 4th 39, 48 (2010).

The parties reached a binding agreement as to all material settlement terms on October 21, 2022: payment by Defendant Molina, or the CDCR on his behalf, in the amount of $45,000, in return for a dismissal of the action with prejudice, each party to bear their own attorneys' fees and costs. (Dkt. No. 176-2 at 6-7.) Indeed, the parties advised the Court they had reached a "full settlement." (Dkt. No. 179-1 at 8.)

Despite this certainty, Defendant contends the release terms were not certain and so the email agreement did not contain all material terms. Not so. Plaintiff agreed to a dismissal of the action with prejudice. Such a dismissal operates as a final judgment on the merits that bars Plaintiff's claims. *See Int'l Union of Operating Engineers-Employers Const. Indus. Pension, Welfare & Training Tr. Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993) ("After the parties entered into a settlement agreement, the district court dismissed the entire action with prejudice. The dismissal of the action with prejudice constitutes a final judgment on the merits."). It is no different than if the case had proceeded to judgment in Defendant's favor. The release Defendant gets under this settlement is the same as if judgment was entered in the case.

Defendant's insistence that Plaintiff's agreement to dismiss his action with prejudice means the parties contemplated including some sort of release in the formal settlement agreement and therefore they had not yet agreed to the release terms makes no sense. The claims—and parties—to be released are those that are released through dismissal of the action with prejudice. Defendant's alternative request—that the Court "supply a release that is reasonable in scope and

3

consistent with other prisoner settlement agreements" —is contrary to basic contract law. Defendants cite nothing to support the remarkable proposition that this Court could order Plaintiff to agree to a release to which he indisputably never agreed. Defendant does not contend he ever mentioned his settlement offer was contingent upon Plaintiff agreeing to release non-parties to this action and there is nothing in the record to suggest he did.

Defendant also asserts he would have never agreed to the settlement if he understood Plaintiff would not agree to release the CDCR. Accepted. But a party's "undisclosed intent or understanding is irrelevant to contract interpretation." *Cedars-Sinai Med. Ctr. v. Shewry*, 137 Cal. App. 4th 964, 980 (2006).

For the same reasons the Court declines Plaintiff's invitation to include a payment timing term. Again, there is nothing in the October 21, 2022 email chain that suggests a timing term was discussed, let alone part of the "terms and conditions" to which the parties agreed.

## CONCLUSION

As the parties entered a binding settlement agreement on October 21, 2022, the Court enforces the terms and conditions of that agreement; namely:

(1) payment of $45,000 by defendant Molina (or by CDCR on his behalf), reduced by $34,074.02, which includes Mr. Horton's remaining restitution obligation, the 5% administrative fee, and the court costs, which yields a net payment to Mr. Horton of $410,925.98;

(2) a dismissal of Mr. Horton's action with prejudice; and

(3) each party to bear their own costs and fees.

This Order disposes of Docket No. 176,

**IT IS SO ORDERED.**

Dated: February 13, 2023

JACQUELINE SCOTT CORLEY
United States District Judge